UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| ANITA WATKINS | ) | 3:19-CV-00593 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF WATERBURY BOARD OF EDUCATION | ) | March 11, 2020 |
| *Defendant*. | ) | |

**MEMORANDUM OF DECISION ON THE DEFENDANT'S MOTION TO DISMISS (ECF NO. 14)**

Kari A. Dooley, United States District Judge

Plaintiff Anita Watkins ("Plaintiff") brings this employment discrimination action against her employer, the City of Waterbury Board of Education ("Defendant" or "the Board"). She alleges discrimination on account of her race and ethnicity and retaliatory conduct as a result of her complaints regarding the same, in violation of both state and federal law. She also asserts a common law claim for intentional infliction of emotional distress ("IIED") under Connecticut law. Pending before the Court is the Defendant's motion to dismiss the IIED claim.[1] For the reasons that follow, the motion to dismiss as to Plaintiff's IIED claim is GRANTED.

**Standard of Review**

A defendant may seek dismissal of a claim if it fails to state a claim for which any relief might be granted. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

---

[1] The Defendant moved to dismiss four counts of the original complaint. In her opposition to the motion to dismiss, the Plaintiff abandoned her negligence claims (Counts Five and Seven). She also filed an amended complaint (ECF No. 25), which addressed the motion with respect to Count Four. Left for the Court is the motion to dismiss Count Six, the IIED claim.

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the nonmovant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Allegations**

Plaintiff is a 60-year-old black woman of Hispanic descent. She was born in Guatemala and at times, speaks with an accent. Watkins earned her bachelor's degree in 2003. She began teaching in 2004 and was eventually employed by the Board in 2006. She has taught for the Board since 2006. She was promoted to "lead teacher" in the family and consumer sciences department at Wilby High School in 2013.

In 2011, Plaintiff earned a Master of Science degree in educational leadership. In 2013, she earned an "intermediate administrator certification (092) and a 6th Year advanced degree in educational leadership." (ECF No. 25 ¶ 18). At present, she is enrolled in a doctoral program in educational leadership.

Since receiving her certification, Plaintiff has applied for more than twenty-five administrator positions in Waterbury schools. Each position was awarded to a White, American-born, non-Hispanic candidate. In addition, Plaintiff has been largely denied the opportunity to

"stand in" when an assistant principal is absent while others—"white, non-Hispanic, American-born and usually younger employees," have been given that opportunity. (*Id.* ¶¶ 21–22). When Plaintiff complained about the lack of opportunity to "stand in" or serve as an "on–call" administrator, the then–principal told her "that if she 'made this about race,' she would never be selected again." (*Id.* ¶ 23).

For four years, Plaintiff acted as the "unofficial" department head for the family and consumer sciences department. When she asked for her position to be made "official" so that she would have both the title and compensation for the work she was doing, her request was denied. Plaintiff has also repeatedly requested additional training that had been afforded to White, non-Hispanic employees of the Board but her requests were denied.

In October 2016, Plaintiff asked a Wilby High School administrator if her race and ethnicity prevented her from being promoted or maintaining her role at the school. In a "mocking way," he responded that "'the District is looking to put more "Latinos" in higher positions,' with an emphasis on the term 'Latinos.'" (*Id.* ¶ 35).

In May 2017, Plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") alleging that she was being denied advancement and certain opportunities that were being provided to persons outside her protected class. Since the filing of the complaint with the CHRO, she has been effectively demoted, ignored, and excluded from leadership team meetings, school committees and trainings. For example, Plaintiff worked on a special presentation to take place before community members, the Board, local community colleges and district staff, but after completing the research and preparation, she was not allowed to make the presentation. Instead, a White woman made the presentation. Plaintiff began to feel targeted and ostracized.

In January 2018, Plaintiff applied for at least two vice-principal positions in Waterbury schools. In each instance, a younger, White, American-born woman was hired to fill the position.

Over time, Plaintiff has had conversations with Board members, administrators, management and others. Her inquiries were ignored or she was left feeling embarrassed and humiliated. "As a result of her repeated oversight for advancement and the Board's discriminatory practices, Watkins has been very upset, humiliated, embarrassed, helpless and emotionally devastated. Those feelings have only worsened as due [sic] to the retaliation she has suffered." (*Id*. ¶ 44). Her emotional distress has manifested itself in a diagnosis of depression, panic attacks, bouts of tears, low self-esteem and sleeplessness.

**Discussion**

The Defendant seeks dismissal of the Plaintiff's IIED claim on the ground that the allegations, even if proven, do not rise to the level necessary to state a claim for IIED under Connecticut law. The Plaintiff counters that dismissal at this stage of the proceedings is inappropriate when construing the amended complaint liberally and drawing all reasonable inferences in Plaintiff's favor.

In Connecticut, to state a claim of intentional infliction of emotional distress, Plaintiff must allege: (1) that the Defendant intended to inflict emotional distress or knew or should have known that such distress was a likely result of its conduct; (2) that the conduct was extreme and outrageous; (3) that the Defendant's conduct was the cause of Plaintiff's distress; and (4) that the emotional distress sustained by the Plaintiff was severe. *See Appleton v. Bd. of Educ. of Town of Stonington*, 757 A.2d 1059, 1062 (2000) (citing *Petyan v. Ellis*, 510 A.2d 1337, 1342 (1986)). Extreme and outrageous conduct is defined as conduct that "exceeds all bounds usually tolerated by decent society." *Crocco v. Advance Stores Co. Inc.*, 421 F. Supp. 2d 485, 503 (D. Conn. 2006)

(internal quotation marks omitted) (citing *Carrol v. Allstate Insurance Co.*, 815 A.2d 119, 126 (2003)). It is conduct that is "regarded as atrocious, and utterly intolerable in a civilized community. . . . [where] recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" *Appleton*, 757 A.2d at 1062 (citation omitted; internal quotation marks omitted). Conduct that is "merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Id*. (internal quotation marks omitted).

Whether "conduct is sufficient to satisfy the element of extreme and outrageous conduct is a question, in the first instance, for the court." *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 194 (D. Conn. 2000) (citing *Johnson v. Chesebrough–Pond's USA Co.*, 918 F. Supp. 543, 552 (D. Conn. 1996)). Only where reasonable minds might disagree does it become an issue for the jury. *DiTeresi v. Stamford Health System, Inc.*, 63 A.3d 1011, 1020 (2013).

Here, Plaintiff's allegations simply do not rise to the level of extreme and outrageous conduct as is required under Connecticut law. The Defendant's conduct is largely, though not entirely, passive. The Defendant is alleged to have failed to promote the Plaintiff, ignored the Plaintiff, and failed to provide training or leadership opportunities to the Plaintiff. The Defendant is further alleged to have "effectively demoted" the Plaintiff, taking away some of her leadership and training duties. And the Defendant is alleged to have acted with either a discriminatory motive or a retaliatory motive. But even if proven, the conduct and the motive combined, do not amount to "atrocious" conduct or conduct that is "utterly intolerable in a civilized community." *See Perez-Dickson v. City of Bridgeport*, 43 A.3d 69, 101 (2012) (Where defendants told plaintiff that her career was in jeopardy during a performance evaluation and thereafter transferred her to a different school, no juror could conclude that the conduct was "'beyond all possible bounds of decency . . .

atrocious, and utterly intolerable in a civilized community.'"); *Tracy v. New Milford Public Schools*, 922 A.2d 280, 283–87 (2007) (motion to strike IIED claim properly granted where plaintiff claimed that defendants conspired to engage in a pattern of harassment including denial of a position, initiation of disciplinary actions without proper investigation, and defamation and intimidation of plaintiff), *cert. denied*, 931 A.2d 935 (2007); *Appleton*, 757 A.2d at 1063 (summary judgment against plaintiff on IIED claim was proper where defendants made condescending comments about plaintiff in front of colleagues, questioned plaintiff's vision and ability to read, informed plaintiff's daughter that she was acting differently and should take time off, asked police to escort plaintiff from school, required plaintiff to subject herself to psychiatric testing, forced plaintiff to take leave of absence, suspended plaintiff, and forced plaintiff to resign); *see also Allen v. Egan*, 303 F. Supp. 2d 71, 78 (D. Conn. 2004) ("Although employment discrimination is illegal, it does not *per se* give rise to a claim for intentional infliction of emotional distress."); *Koestner v. Derby Cellular Prod.*, 518 F. Supp. 2d 397, 403 (D. Conn. 2007) (same).

The motion to dismiss as to Count Six is GRANTED.

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of March 2020.

                                                 /s/ Kari A. Dooley
                                                 KARI A. DOOLEY
                                                 UNITED STATES DISTRICT JUDGE