# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANITA WATKINS, | ) | 3:19-CV-00593 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF WATERBURY BOARD OF | ) | |
| EDUCATION, | ) | August 12, 2022 |
| *Defendant*. | ) | |

## RULING AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

Plaintiff Anita Watkins has brought this action alleging that Defendant, the City of Waterbury Board of Education, discriminated against her on the basis of her race, gender, and age, and retaliated against her when she complained about this discrimination. Specifically, Plaintiff contends that Defendant denied her several promotions and other career advancement opportunities in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). The second amended complaint ("SAC") consists of two counts: (1) discrimination in violation of Title VII; and (2) retaliation in violation of Title VII.

Defendant seeks summary judgment with respect to both counts of the SAC, contending that there are no material facts in dispute to support Plaintiff's claims. Defendant also asserts that certain of Plaintiff's claims are untimely or should fail because Plaintiff has not exhausted her administrative remedies. Plaintiff disagrees, and further argues that the Court should not consider much of the evidence referenced in Defendant's moving papers because the evidence was not properly disclosed before the discovery deadline in this action.

For the reasons described below, the Court agrees with Plaintiff that much of the evidence submitted by Defendant should be precluded based on Defendant's failure to comply with the

Federal Rules of Civil Procedure.  The Court further agrees with Plaintiff that genuine disputes of material fact remain with respect to some of the promotions and career advancement opportunities Plaintiff sought.  However, the Court finds that there are no genuine disputes of material fact with respect to other promotions and career advancement opportunities and, as a result, summary judgment is appropriate to the extent the SAC pertains to those opportunities.  Accordingly, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## I.      FACTUAL BACKGROUND

Unless otherwise noted herein, the parties do not dispute the following facts.  Plaintiff is a Black woman of Hispanic descent who was born in Guatemala.  Pl. Rule 56(a)2 St., ECF No. 71, ¶ 1.  Defendant is a board of education that operates and maintains public schools in the City of Waterbury, Connecticut.  *Id.* ¶ 2.  Defendant employed Plaintiff as a Family and Consumer Sciences teacher from July 2006, Answer, ECF No. 76, ¶ 8, until her resignation in September 2020, Watkins Aff., ECF No. 72, ¶ 31.  During her employment for Defendant, Plaintiff applied for several promotions and sought out various other career advancement opportunities, many of which she was denied.  *See generally* Pl. Rule 56(a)2 St.; *see also* ECF No. 71-10.

On May 8, 2017, Plaintiff filed an administrative charge with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC"), alleging, among other things, violations of Title VII with respect to Defendant's alleged failure to promote or advance Plaintiff and discrimination in the terms and conditions of Plaintiff's employment.  Pl. Rule 56(a)2 St. ¶ 3; Ex. A to Mot., ECF No. 61-3 (Plaintiff's "First CHRO/EEOC Complaint").  Plaintiff claims that, before she filed her First CHRO/EEOC Complaint, she attended leadership meetings, ran instructional data team meetings, served on certain committees, served as an advisory and Student Success Plan (SSP) facilitator,

and served as the Career & Technology Education (CTE) Coordinator at Wilby High School for several years. *See* Pl. Rule 56(a)2 St. ¶¶ 116, 117–18, 121. Plaintiff further asserts that she was not invited to participate in these opportunities after she filed the First CHRO/EEOC Complaint. *Id.* ¶¶ 116, 117–18, 121, 124. In addition, Plaintiff claims that, in the weeks and months after she filed her First CHRO/EEOC Complaint, she applied for and was denied multiple promotions. *See id.* ¶ 29; *see* ECF No. 71-10 at 4–5.

On March 17, 2018, Plaintiff filed a second administrative charge with the CHRO and EEOC, alleging, among other things, retaliation and discrimination in violation of Title VII. Pl. Rule 56(a)2 St. ¶ 4; Ex. B to Mot., ECF No. 61-4 (Plaintiff's "Second CHRO/EEOC Complaint"). Plaintiff claims that, in the months and years after she filed her Second CHRO/EEOC Complaint, she applied for and was denied several promotions. *See* Pl. Rule 56(a)2 St. ¶ 29; *see* ECF No. 71-10 at 1–4. Plaintiff further asserts that she was not selected to serve in an on-call, substitute administrator role at all in 2018 and 2019, after she filed the Second CHRO/EEOC Complaint, and that before that time, she was selected to fill this role only on rare occasions. Pl. Rule 56(a)2 St. ¶¶ 97–104. Additional facts, including information regarding specific positions for which Plaintiff applied, will be discussed throughout the remainder of this ruling, where relevant.

## II.   PROCEDURAL BACKGROUND

On October 12, 2018, the CHRO issued a Finding of No Probable Cause with respect to the First CHRO/EEOC Complaint. Pl. Rule 56(a)2 St. ¶ 5; Ex. C to Mot., ECF No. 61-5. On January 23, 2019, the CHRO issued Releases of Jurisdiction with respect to Plaintiff's Second CHRO/EEOC Complaint. Pl. Rule 56(a)2 St. ¶ 7. The EEOC then issued Plaintiff a Notice of Right to Sue letter with respect to the Second CHRO/EEOC Complaint in March 2019. *Id.*; ECF No. 71-15. Plaintiff thereafter commenced this action by filing her original complaint on April

22, 2019.  ECF No. 1.  The original complaint included seven counts, including claims under Title

VII and Connecticut state law.  *Id.*

On October 25, 2019, after Defendant moved to dismiss four counts of the original

complaint, Plaintiff filed an amended complaint in which she abandoned certain state law claims.

ECF No. 25.  The Court subsequently granted Defendant's motion to dismiss with respect to one

state law claim that Plaintiff had not abandoned.  ECF No. 34.  On August 31, 2020, Defendant

filed a motion to dismiss Plaintiff's amended complaint.  ECF No. 41.  In response, Plaintiff filed

her SAC, asserting one count for discrimination in violation of Title VII and one count for

retaliation in violation of Title VII, which rendered the pending motion to dismiss moot.  ECF

Nos. 45, 78.  On June 14, 2021, after settlement discussions proved unsuccessful, Defendant filed

a motion for summary judgment.  ECF No. 71.  Defendant then belatedly filed an answer to the

SAC on September 23, 2021.  ECF No. 76.

### III.    PRECLUSION

In her opposition to Defendant's motion for summary judgment, Plaintiff seeks preclusion

of certain witness testimony and several documents that were disclosed after the discovery

deadline and, in some instances, for the first time as attachments to Defendant's summary

judgment motion.  For the reasons below, the Court finds that preclusion is warranted.

### A.    Legal Standard

Federal Rule of Civil Procedure 26 pertains to the parties' "duty to disclose" and sets forth

the "general provisions governing discovery."  Rule 26(a)(1) pertains to initial disclosures.  Rule

26(a)(1)(A)(i) requires each party to disclose to the other parties "the name and, if known, the

address and telephone number of each individual likely to have discoverable information—along

with the subjects of that information—that the disclosing party may use to support its claims or

defenses, unless the use would be solely for impeachment."  A party generally must make initial disclosures, based on the information then reasonably available to it, at or within fourteen days after the parties' Rule 26(f) conference.  Fed. R. Civ. P. 26(a)(1)(C); Fed. R. Civ. P. 26(a)(1)(E).  A party is not excused from making its disclosures because its investigation into the case is incomplete, or because the other party has not submitted its disclosures.  Fed. R. Civ. P. 26(a)(1)(E).  In addition to the duty to disclose, Rule 26(e) imposes a duty to supplement previously-exchanged disclosures and discovery responses in a timely manner if a party learns that its disclosure or response is incomplete or incorrect.  Fed. R. Civ. P. 26(e)(1).  The timeliness of a disclosure is assessed based on the time limits imposed under Rules 26(a) and 26(e) and the scheduling order governing the case.  *See Benn v. Metro-North Commuter R.R. Co.*, No. 3:18-cv-737 (CSH), 2019 WL 6467348, at *3 (D. Conn. Dec. 2, 2019).

A district court "has wide discretion in punishing failure to conform to the rules of discovery."  *Grabin v. Marymount Manhattan Coll.*, 659 F. App'x 7, 10 (2d Cir. 2016) (summary order).  Specifically, when a party has failed to comply with Rules 26(a) or 26(e), the Court has discretion to "consider all of the available sanctions under Rule 37(c)(1) as an exercise of its broad discretion."  *Barack v. Am. Honda Motor Co.*, 293 F.R.D. 106, 111 (D. Conn. 2013); *see Benn*, 2019 WL 6467348, at *3.  Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Rule 37(c)(1) is intended to "prevent the practice of sandbagging an opposing party with new evidence."  *Garbinski v. Nationwide Mut. Ins. Co.*, No. 3:10CV1191 VLB, 2012 WL 3027853, at *2 (D. Conn. July 24, 2012) (internal quotation marks omitted).

Under Rule 37(c)(1), the Court has discretion to preclude documents or witnesses. *See Benn*, 2019 WL 6467348, at *3; *Garbinski*, 2012 WL 3027853, at *2. When deciding whether preclusion is appropriate, courts in the Second Circuit consider several factors, including: (1) "the party's explanation for the failure to disclose"; (2) "the importance of the evidence to be precluded"; (3) "the prejudice suffered by the opposing party if the evidence were not precluded"; and (4) "the possibility of a continuance." *Bryant v. City of Hartford*, ___ F. Supp. 3d ___, 2022 WL 445808, at *5 (D. Conn. Feb. 14, 2022); *see Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006). "[A]lthough a 'bad-faith' violation of . . . Rule 26 is not *required* in order to exclude evidence pursuant to Rule 37, it can be taken into account as part of the party's explanation for its failure to comply." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).

It is "[u]ltimately . . . within the district court's discretion whether to preclude the improperly disclosed information or 'impose other appropriate sanctions.'" *See Benn*, 2019 WL 6467348, at *3. Importantly, "preclusion is 'a drastic remedy' that is 'generally disfavored.'" *Id.* Thus, "[b]efore the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988). For example, a court may assess fees and costs to the party, or counsel for the party, that failed to comply. Fed. R. Civ. P. 37(c)(1)(A). A court may also "consider reopening discovery in a manner that 'would remedy the prejudice' suffered by the party seeking preclusion 'without incurring excessive additional costs.'" *Benn*, 2019 WL 6467348, at *7.

B.  Discussion

*1.  Preclusion Sought by Plaintiff*

Plaintiff contends that, due to untimely and missing disclosures by Defendant, several witnesses and records were disclosed after discovery ended and, in some instances, for the first time in Defendant's summary judgment papers.  Plaintiff thus requests preclusion of various witnesses and records.

First, Plaintiff requests that the Court preclude several paragraphs of the affidavit of Lisa Dunn, ECF No. 69, who is identified as Senior Human Resources Generalist for the Department of Education of the Waterbury Public Schools.  Plaintiff claims that, although Defendant identified Dunn in its response to Plaintiff's interrogatories as a witness who may have knowledge about Plaintiff's applications for a summer school site coordinator position, Defendant did not disclose Dunn as a relevant witness as to several other positions.  Plaintiff contends that Defendant now seeks to use Dunn's affidavit, and exhibits attached to it that were not previously produced, as evidence concerning the screening process for several positions in addition to the summer school site coordinator position.  Plaintiff further argues that other exhibits attached to Dunn's affidavit were produced only after the discovery period closed.  Plaintiff contends she was prejudiced by these missing and late disclosures because she did not have the opportunity to adequately depose Dunn or collect evidence to respond to Dunn's evidence during discovery.

Plaintiff also requests that the Court preclude the affidavit of Katherine Christ, who is identified as a Human Resources Assistant for the City of Waterbury Department of Education, and the attachment thereto, ECF No. 61-13, and the affidavit of Verna D. Ruffin, ECF No. 61-14, who is identified as the City of Waterbury Superintendent of Schools, because neither witness was identified by Defendant prior to the filing of its summary judgment motion.  Again, Plaintiff

contends that she was deprived of an opportunity to depose these witnesses and develop evidence concerning the assertions in their affidavits.

### 2.  Defendant's Failure to Comply with Rules 26(a) and 26(e)

Defendant's conduct in this litigation has been marked by numerous failures to comply with the Federal Rules of Civil Procedure, including Rules 26(a) and 26(e).  First, Defendant concedes that it did not provide initial disclosures as required by Rule 26(a).[1]  *See* ECF No. 77 at 4.  This violated the parties' Court-approved stipulation that Rule 26(a) disclosures would be exchanged by January 12, 2020.  *See* ECF Nos. 30, 31.  The Court rejects Defendant's argument that the information that would have been included in its initial disclosures was included in its June 5, 2020, responses to Plaintiff's discovery requests, as this does not excuse Defendant's violation.  ECF No. 77 at 2, 4.  Moreover, even if the Court were to accept Defendant's characterization of its discovery responses as its initial disclosures, the disclosures were submitted nearly five months after the January 12, 2020, deadline.  *See* ECF Nos. 30, 31.  Accordingly, it is clear that Defendant failed to comply with Rule 26(a).

Second, Defendant failed to comply with Rule 26(e) because it did not fulfill its obligation to timely supplement its responses to Plaintiff's requests for production and interrogatories.  Defendant asserts that it supplemented its June 5, 2020, responses to Plaintiff's discovery requests on several dates between April 7, 2021, and May 28, 2021, after intensive searches of its records.  ECF No. 77 at 4.  But discovery closed on April 4, 2021.  ECF No. 59.  Thus, by Defendant's own account, its *first* supplemental production occurred three days after the close of discovery and more than ten months after its initial production.  The Court rejects Defendant's conclusory assertions that it acted in a timely manner pursuant to Rule 26(e)(1) because certain information only recently

---

[1] While Defendant is at fault for failing to make these disclosures, the Court notes that Plaintiff should have notified the Court when she did not receive the disclosures, as that could have allowed for earlier Court intervention.

became available, and because the COVID-19 pandemic made it difficult to locate documents, *see* ECF No. 77 at 2, 4.  Defendant offers no specificity as to why it took until after discovery was complete—almost two years after this action was filed—to locate certain documents.  Moreover, Defendant's purported inability to locate documents does not explain its failure to properly disclose certain *witnesses* until the filing of its summary judgment motion.  Thus, Defendant failed to comply with Rule 26(e).

### 3.  Preclusion Is Warranted

As noted, when determining whether preclusion is warranted pursuant to Rule 37(c), courts in the Second Circuit consider several factors, including:  (1) "the party's explanation for the failure to disclose"; (2) "the importance of the evidence to be precluded"; (3) "the prejudice suffered by the opposing party if the evidence were not precluded"; and (4) "the possibility of a continuance."  *Bryant*, 2022 WL 445808, at *5.  On balance, these factors weigh in favor of preclusion.

### a.  First Factor: Defendant's Explanation for Failing to Disclose

The first factor, Defendant's explanation for failing to comply with disclosure requirements, weighs heavily in favor of preclusion.  Because Defendant claims it complied with Rule 26(e), it offers no explanation for failing to comply with that rule.  What little explanation Defendant does offer for failing to comply with Rule 26(a) is almost entirely baseless.

At the outset, Defendant does not dispute that, prior to filing its pending motion for summary judgment, it failed to disclose as persons with discoverable information Verna Ruffin and Katherine Christ.  In response to Plaintiff's interrogatories, Defendant disclosed that Lisa Dunn would have information about Plaintiff's applications for a certain summer job, but did not disclose any other topics that would be included in Dunn's testimony.  Given that Defendant now

argues that these are important witnesses, *see* ECF No. 77 at 5–6, it is difficult to understand why Defendant failed to disclose them.  *See Thieriot v. Jaspan Schlesinger Hoffman, LLP*, No. CV 07-5315 TCP AKT, 2010 WL 4038765, at *5 (E.D.N.Y. Sept. 30, 2010) ("Significantly, Defendants now assert the importance of this witness . . . . [I]t is difficult to understand how Defendants' counsel, exercising a minimum of due diligence, could have overlooked the inclusion of the now-important [witness] . . . ."); *see also Haas v. Del. & Hudson Ry. Co.*, 282 F. App'x 84, 86–87 (2d Cir. 2008) (summary order) (finding that district court did not abuse its discretion in excluding affidavit where party had offered "no adequate explanation for th[e] untimely disclosure" of a witness).  Defendant has failed to offer any adequate excuse for neglecting to disclose these witnesses and topics.

Moreover, the Court rejects Defendant's assertion that the COVID-19 pandemic excuses its failure to disclose.  To be sure, during the pendency of this action, the pandemic has made it more difficult to conduct certain forms of discovery.  However, on December 31, 2020, the parties represented to the Court that discovery, except for certain depositions, was substantially complete.  ECF No. 50 at 1.  At that time, Defendant did not assert that it was still inspecting its own documents, as would be expected if the pandemic were causing delays in that process.  The nature of the exhibits that were untimely produced further demonstrates that Defendant's failures are not excused by the pandemic.  For example, the attachment to the Christ affidavit is an image purporting to show an online display Plaintiff would have seen when applying for a job in 2019.  *See* ECF No. 61-13 at 6.  Defendant offers no explanation regarding why this electronic document could not have been produced sooner.  Accordingly, the Court puts little weight in Defendant's attempt to blame its failures on the COVID-19 pandemic.

The Court also rejects Defendant's assertion that, even if it had submitted a Rule 26(a) disclosure by the January 12, 2020, deadline, information relating to more recently disclosed documents would not have been included.  ECF No. 77 at 2.  The Court need not go beyond the plain text of Rule 26 to determine that this excuse is meritless.  Rule 26(a)(1)(E) specifically provides that a party makes its initial disclosures based on the information "then reasonably available to it" and cannot shirk its duty because it has not fully investigated the case.  Defendant's excuse that a timely-filed initial disclosure would not have included more recently discovered information is exactly the type of unacceptable excuse squarely rejected by Rule 26.

Due to Defendant's ill-fated excuses for its failure to disclose, the first factor weighs heavily in favor of preclusion.  *See Garbinski*, 2012 WL 3027853, at *4–5 (finding that evidence should be excluded where party had "offered nothing more than a convoluted excuse" for its failure to disclose documents before submitting them as exhibits to summary judgment briefing).

### b.  *Second Factor: Importance of Evidence that Would Be Precluded*

The second factor, the importance of the evidence that would be precluded, weighs against preclusion, though not heavily.  As a preliminary matter, Defendant has not provided briefing regarding the importance of the affidavit exhibits Plaintiff seeks to preclude (as opposed to the affidavits themselves) and, as a result, the Court is left to speculate about the importance of these exhibits.  Lacking specific arguments from Defendant as to the exhibits' importance, the Court finds that the importance of any affidavit exhibits Plaintiff seeks to preclude does not weigh heavily against preclusion.

Turning to the testimony that Plaintiff seeks to preclude, the Dunn testimony appears to pertain to important topics, such as whether Plaintiff was qualified for certain positions and the application and selection processes for these positions.  However, Defendant argues that Dunn

acquired knowledge of these topics by "going through boxes of files."  ECF No. 77 at 5.  It is difficult to understand how Dunn acquired any unique knowledge in this manner, or any firsthand knowledge about Plaintiff's applications for positions.  Rather, Defendant's arguments about the importance of Dunn's testimony are effectively arguments about the importance of the documents she reviewed.  To the extent the documents were properly and timely disclosed, they will not be precluded.  But to the extent the documents were not properly disclosed, Defendant could, and should, have made specific arguments about their importance.  The Court therefore finds that the importance of the Dunn testimony Plaintiff seeks to preclude does not weigh heavily against preclusion.

Defendant's arguments about the importance of Christ's testimony are sparse and largely unpersuasive.  Defendant asserts that Christ's testimony is important because it relates to her knowledge of Defendant's online job application system and Plaintiff's application for Job #1448.  *Id.* at 3.  The Christ affidavit, which consists of only nine short paragraphs, posits that Plaintiff withdrew her application for Job #1448 when she applied for Job #1455.  Christ Aff. ¶ 8.  This would appear important to Defendant's contention that it did not violate Title VII with respect to Job #1448.  However, the materiality and admissibility of Christ's testimony are questionable.  For example, Plaintiff argues that Christ cannot competently testify about whether Plaintiff withdrew her application for Job #1448 because Christ does not have personal knowledge of what Plaintiff clicked on when she was applying for Job #1455.  *See* ECF No. 70 at 27; *see also Delacroix v. Lublin Graphics, Inc.*, 993 F. Supp. 74, 80 (D. Conn. 1997) (noting that "[u]nder Rule 56(e), affidavits must 'be made on personal knowledge[]'").  In addition, the image of the online application system attached to the Christ affidavit is dated May 23, 2021, and, as a result, it is unclear whether it is the same screen Plaintiff would have seen when she applied for Job #1455 in

August of 2019, *see* ECF No. 71-10 at 1.  Accordingly, despite the potential significance of the Christ affidavit as to Plaintiff's allegations with respect to Job #1448, the importance of Christ's testimony weighs only slightly against preclusion.

Finally, the importance of Ruffin's testimony weighs against preclusion.  Defendant asserts that Ruffin was the primary decisionmaker with respect to Job #1495/1567, and that Ruffin has firsthand knowledge of Defendant's selection process for this position.  ECF No. 77 at 6.  Given that Ruffin might be the only source of certain relevant information regarding Job #1495/1567, Ruffin's testimony appears to be important.

On balance, the Court finds that the second factor weighs slightly against preclusion.

### c.  *Third Factor: Prejudice Suffered by Plaintiff*

The third factor, the prejudice suffered by Plaintiff as a result of having to prepare to meet the new evidence offered by Defendant, weighs heavily in favor of preclusion.  First, Defendant's failure to produce initial disclosures, and its belated identification of witnesses whose testimony it now seeks to rely upon, resulted in Plaintiff not having the opportunity to depose Defendant's witnesses about all topics in their affidavits.  This is especially prejudicial where these witnesses have provided testimony on issues such as whether Plaintiff was qualified for certain positions. *See* ECF No. 70 at 18–19; Dunn Aff. ¶ 14.  In addition, the prejudice Plaintiff would suffer is compounded by the fact that Defendant did not file an answer until roughly three weeks after Plaintiff filed her opposition to Defendant's motion for summary judgment.  *See* ECF No. 76.[2] Plaintiff persuasively argues that, because she did not have notice of Defendant's witnesses,

---

[2] Indeed, Defendant failed to file an answer to Plaintiff's SAC until more than three months *after* Defendant moved for summary judgment.  *See* ECF Nos. 61 (motion for summary judgment filed June 14, 2021) and 76 (answer filed September 23, 2021).  Plaintiff was understandably handicapped in her ability to understand Defendant's defenses due to Defendant's untimely answer.

evidence, and defenses, she could not adequately conduct discovery regarding belatedly disclosed information.  ECF No. 70 at 30.

Importantly, courts in this Circuit have discussed the extreme prejudice suffered by parties under similar circumstances.  *See Garbinski*, 2012 WL 3027853, at *4 (finding that consideration of documents first disclosed as exhibits to summary judgment briefing would be "enormously prejudicial" where, among other things, "[t]he discovery period ha[d] long been closed, even considering the multiple generous extensions granted by the Court" and reopening discovery "would only cause further delay and waste additional resources"); *Haas*, 282 F. App'x at 86 (discussing the "prejudice caused by waiting until after the close of discovery" to disclose a witness on certain topics).  Likewise, here, the Court finds that Plaintiff would be unfairly prejudiced if the Court were to consider witnesses and documents Defendant did not timely disclose.

The Court emphatically rejects Defendant's argument that any prejudice to Plaintiff is self-inflicted because she could have sought additional time to conduct discovery to remedy Defendant's belated disclosures.  ECF No. 77 at 6.  Defendant waited until after the close of discovery to send hundreds of pages of documents to Plaintiff, despite the Court granting multiple extensions of the discovery deadline.  *See* ECF No. 70 at 29.  Although Plaintiff could have requested that the Court reopen discovery, she was in no way required to do so.  Thus, Defendant's argument that Plaintiff should have delayed resolution of her claims by requesting that discovery be reopened, rather than seeking the available remedy of preclusion, is meritless.  This is especially true given that some documents and witnesses were improperly disclosed for the first time through attachments to Defendant's pending motion, which Plaintiff could not have predicted and which was highly prejudicial to her.  Put simply, Defendant had no right to choose which sanction

Plaintiff sought to remedy Defendant's blatant disregard of its discovery obligations.[3]  Accepting Defendant's argument that its failures are somehow Plaintiff's fault would turn the Federal Rules on their head.  Accordingly, the third factor heavily favors preclusion.

### d.  Fourth Factor: Possibility of Continuance

The fourth factor, the possibility of a continuance, weighs against preclusion.  A trial date has not yet been set, and as a result, there are no pending deadlines for the Court to continue.  However, this does not necessarily mean that preclusion is unwarranted.  *See Grabin*, 659 F. App'x at 11 ("[A]lthough a continuance would be possible, as the trial date had already been adjourned, allowing deadlines to continue to slip 'result[s] in the backup of other cases and eventual scheduling chaos as a series of bottlenecks builds.'" (second alteration in original)).  Defendant's motion for summary judgment has, unfortunately, been pending for more than a year, due in part to the transfer of this case to the undersigned in December of 2021.  The reopening of discovery would likely result in the parties seeking to supplement or otherwise change summary judgment briefing, which would delay the resolution of this case further.  The Court also has little confidence, based on Defendant's actions thus far in this litigation, that Defendant would faithfully abide by any new scheduling order, if one were issued.  Because this case has been pending for more than three years, reopening discovery is an unappealing alternative remedy.

---

[3] Defendant argues that Plaintiff referenced Dunn and Ruffin in her initial disclosures but chose not to take their depositions.  ECF No. 77 at 2.  Defendant further argues that Plaintiff concedes that Dunn was disclosed regarding a summer school coordinator position.  *Id.* at 8–9.  However, Plaintiff's awareness of Dunn and Ruffin as witnesses to issues and events other than those for which Defendant seeks to offer them with respect to its pending motion does not diminish Defendant's obligation to properly disclose these witnesses and their corresponding areas of knowledge.  *See Thieriot*, 2010 WL 4038765, at *5 ("Defendants have had an ongoing duty to supplement their Initial Disclosure throughout the course of this litigation. Counsel's attempt to diminish that obligation by arguing that Plaintiffs have been aware of [the witness at issue] since the beginning of this lawsuit is unavailing, at best.").  Accordingly, Plaintiff's prior awareness of Dunn and Ruffin does not make preclusion improper.

### e. Conclusion

Based on its review of the foregoing factors, the Court finds preclusion is warranted with respect to all evidence Plaintiff seeks to preclude. This evidence will not factor into the Court's examination of Defendant's pending motion for summary judgment, and Defendant may not present this evidence, or the testimony of Katherine Christ or Verna Ruffin, at trial. Lisa Dunn will be permitted to testify at trial only as to the summer school coordinator position as to which she was timely disclosed as a witness, to the extent any claims in Counts One and Two relate to such positions and survive summary judgment. Specifically, the following evidence is precluded:

- The following paragraphs of the affidavit of Lisa Dunn, ECF No. 69: (1) paragraphs 12–15, pertaining to the application process for Job #1001; (2) paragraphs 41–45, pertaining to Job #1455; (3) paragraphs 26–28, pertaining to Job #1363; and (4) paragraphs 35–40 and 72–76, pertaining to Job #s 1424, 1425, 1426, 1427, and 1496;

- The following exhibits to the Dunn affidavit: (1) Exhibit 6, consisting of Defendant's lists of "qualified," "qualified not preferred," and "not qualified" job applicants; (2) Exhibit 8, consisting of Plaintiff's job application for Job #1001; (3) Exhibit 10, pertaining to Job #1363; and (4) Exhibits 16 and 17, pertaining to Job #s 1424, 1425, 1426, 1427, and 1496;

- The entire affidavit of Katherine Christ and the attachment thereto, ECF No. 61-13; and

- The entire affidavit of Verna D. Ruffin, ECF No. 61-14.

## IV.    LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT MOTION

### A.  Summary Judgment

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  With respect to materiality, a fact is "material" only if a dispute over it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  However, a movant "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial.  It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-

movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

B. <u>Discrimination in Violation of Title VII</u>

Title VII prohibits employment discrimination based on an individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "The substantive standards applicable to claims of employment discrimination under Title VII . . . are . . . well established." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the U.S. Supreme Court "set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment" by an employer. *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252 (1981).

Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of "proving by the preponderance of the evidence a *prima facie* case of discrimination." *See Burdine*, 450 U.S. at 252–53 (italicization added); *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1111–12 (2d Cir. 1988); *Gannon v. United Parcel Serv.*, 529 F. App'x 102, 103 (2d Cir. 2013) (summary order). "In order to make out a *prima facie* case of discrimination in violation of Title VII, a plaintiff has the burden of establishing that: (1) [s]he is a member of a protected class; (2) [s]he performed the job satisfactorily or was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination."

*Orlando v. Dep't of Transp., Comm'r*, 459 F. App'x 8, 9 (2d Cir. 2012) (summary order) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). The plaintiff's burden in establishing a *prima facie* case of discrimination is *de minimis*. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000).

Relevant here, an adverse employment action satisfying the third *prima facie* element "is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* Denial of a promotion also constitutes a materially adverse action. *See Valenti v. Massapequa Union Free Sch. Dist.*, No. 09-CV-977(JFB)(MLO), 2010 WL 475203, at *4 (E.D.N.Y. Feb. 5, 2010); *see also Scé v. City of New York*, No. 20-3954-CV, 2022 WL 598974, at *1 (2d Cir. Mar. 1, 2022) (summary order) (discussing discriminatory failure to promote claim under Title VII).

With respect to the fourth *prima facie* element, "there is no unbending or rigid rule about what circumstances allow an inference of discrimination when there is an adverse employment decision." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). Rather, this element is a "flexible one that can be satisfied differently in differing factual scenarios." *Id.* Circumstances that could potentially give rise to an inference of discriminatory motive include actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, preferential treatment given to employees outside the protected class, or a pattern of recommending the plaintiff for positions for which he or she is *not* qualified and failure to surface the plaintiff's name for positions for which he or she *is* well-qualified. *Id.* But, whatever the

factual scenario, it is essential that a plaintiff "come forward with some evidence, beyond merely stating that [s]he is a member of a protected class who suffered an adverse employment decision." *James v. Mun. Credit Union*, No. 13CV4568-LTS-KNF, 2016 WL 698136, at *4 (S.D.N.Y. Feb. 19, 2016).

"Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254 (italicization added). The burden then shifts to the defendant "to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Id.* "If the employer articulates such a reason, the plaintiff 'is given an opportunity to adduce admissible evidence that would be sufficient to permit a rational finder of fact to infer that the employer's proffered reason is pretext for an impermissible motivation.'" *Vivenzio*, 611 F.3d at 106. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Id.*

C. Retaliation in Violation of Title VII

Title VII prohibits employers from retaliating against any employee because the employee has opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII investigation or proceeding. 42 U.S.C. § 2000e-3(a); *see Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015); *Green v. Mount Sinai Health Sys., Inc.*, 826 F. App'x 124, 125 (2d Cir. 2020) (summary order). Like Title VII discrimination claims, claims alleging retaliation in violation of Title VII are subject to the *McDonnell Douglas* burden-shifting framework. *Chen*, 805 F.3d at 70. Under this framework, the plaintiff must first "establish a *prima facie* case of retaliation by showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection

between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010); *see also Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012). "The plaintiff's burden in this regard is '*de minimis*,' and 'the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive.'" *Hicks*, 593 F.3d at 164.

To establish an adverse action for purposes of a Title VII retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). Title VII "does not set forth a general civility code for the American workplace," and "[p]etty slights or minor annoyances that often take place at work and that all employees experience do not constitute actionable retaliation." *Hicks*, 593 F.3d at 165 (internal quotation marks omitted). Therefore, Title VII protects only against retaliation "that produces an injury or harm." *Id.* However, "in determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Id.*

If a plaintiff establishes that she has endured an adverse employment action, she must then establish the fourth element of her *prima facie* case, namely, a causal connection between her protected activity and the adverse employment action. "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus

directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

If the plaintiff sustains the initial burden of establishing a *prima facie* case, "a presumption of retaliation arises." *Hicks*, 593 F.3d at 164. The defendant must then "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* If the defendant does so, "the presumption of retaliation dissipates," *id.*, and the burden shifts back to the employee to "show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision," *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 349, 360 (2013)). However, "'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* "A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Id.*

### D. Exhaustion and Timeliness

Title VII imposes both exhaustion and timeliness requirements on plaintiffs. First, "[o]rdinarily, a plaintiff seeking to bring a claim pursuant to . . . Title VII . . . must exhaust administrative remedies through the EEOC or CHRO." *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018). "The exhaustion of administrative remedies is an 'essential element' of the Title VII statutory scheme and functions as a prerequisite to bringing such claims in federal court." *Alungbe v. Bd. of Trs. of Conn. State Univ. (CSU) Sys.*, 283 F. Supp. 2d 674, 681 (D. Conn. 2003). "[T]he burden of pleading and proving Title VII

exhaustion lies with defendants and operates as an affirmative defense." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018).

Moreover, Title VII limits the time during which a plaintiff may assert his or her claims. Specifically, "Title VII requires that, before bringing suit under the statute, a plaintiff must first file a complaint with the EEOC or with a state equal employment agency within 180 or 300 days, respectively," of the alleged discrimination or retaliation. *Alungbe*, 283 F. Supp. 2d at 680 (citing 42 U.S.C. § 2000e-5(e)(1)). Like exhaustion, "[t]he statute of limitations is an affirmative defense as to which [d]efendants carry the burden of showing that [p]laintiffs failed to plead timely claims." *Franklin v. N.Y.C. Transit Auth.-Metro. Transp. Auth.*, No. 18-CV-6436 (JGK), 2021 WL 4710762, at *3 (S.D.N.Y. Oct. 8, 2021). In this case, the parties agree that the "lookback" period the Court should apply to determine whether Plaintiff's claims are timely is the 300-day period preceding Plaintiff's Second CHRO/EEOC Complaint, which is dated March 17, 2018. *See* ECF No. 61-2 at 6. As a result, to be actionable, any of Defendant's alleged discrete acts of discrimination or retaliation must have occurred between May 21, 2017, and March 17, 2018.

For the purpose of determining whether claims are timely, courts in this Circuit distinguish between "discrete" retaliatory or discriminatory acts and "continuing violations." With respect to the former category, "[e]xamples of discrete discriminatory acts include 'termination, failure to promote, denial of transfer, or refusal to hire.'" *Berroa v. Dep't of Dev. Servs.*, No. 3:19-CV-0867 (JCH), 2020 WL 12863317, at *5 (D. Conn. Sept. 17, 2020); *see Delrio v. Univ. of Conn. Health Care*, 292 F. Supp. 2d 412, 420 (D. Conn. 2003) ("[I]t is well settled law in the Second Circuit that 'discrete acts' include discriminatory transfers, job assignments and non promotions, and failure to compensate adequately."). "Such acts are discrete in that each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful

employment practice." *Berroa*, 2020 WL 12863317, at \*5 (internal quotation marks omitted). Importantly, "[a] discrete retaliatory or discriminatory act occurred on the day that it happened." *Alungbe*, 283 F. Supp. 2d at 681 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002), *superseded in part by statute*, Lily Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5). As a result, when seeking administrative relief through a state equal employment agency, "[a] party . . . must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it." *Id.* (third alteration in original) (quoting *Morgan*, 536 U.S. at 110).

By contrast, "under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an [administrative] charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155–56 (2d Cir. 2012). However, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 156. Accordingly, where a discrete act "fall[s] outside the limitations period," it "cannot be brought within it," even where the act was "undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Id.*

## V. COUNT ONE: DISCRIMINATION IN VIOLATION OF TITLE VII

In Count One, Plaintiff alleges that Defendant discriminated against her in violation of Title VII by denying her several positions and career advancement opportunities. Plaintiff states that her promotion discrimination claim pertains to positions she applied for from May 21, 2017, through March 17, 2018, *i.e.*, Job #s 963, 964, and 1001.[4] ECF No. 70 at 10. Plaintiff also asserts

---

[4] Plaintiff's briefing states that her promotion discrimination claim "is specific to the positions she applied for from May 21, 2017[,] through March 17, 2018, specifically Job #s 963, 964, and 1001." ECF No. 70 at 10. Therefore, the Court will not address the viability of a discrimination claim as to Job #s 936, 937, and 938, because Plaintiff concedes she applied for these positions before the relevant lookback period.

that she served as a *de facto* department head for many years without being compensated as such, *see* Pl. Rule 56(a)2 St. ¶ 39, and that she was discriminatorily removed from leadership meetings and committees, ECF No. 70 at 23. Finally, the Court interprets Count One as pertaining to the on-call administrator position and the CTE Coordinator position.

Defendant attacks Count One on multiple fronts. First, Defendant argues that Count One is improper insofar as it alleges age discrimination. Second, Defendant asserts that Count One is procedurally improper with respect to several positions and career advancement opportunities due to timeliness and exhaustion issues.[5] Third, Defendant contends that Plaintiff has not established a *prima facie* case of discrimination. Finally, Defendant contends that, even if Plaintiff can establish her *prima facie* case, Defendant had legitimate, nondiscriminatory reasons for denying Plaintiff certain positions and career advancement opportunities.

At the outset, Defendant is entitled to summary judgment to the extent Count One alleges age discrimination. "Title VII does not cover age-based discrimination," *Napolitano v. Tchrs. Coll.*, No. 1:19-CV-09515 (MKV), 2021 WL 4443143, at *3 (S.D.N.Y. Sept. 28, 2021), and Plaintiff concedes that her allegations of age discrimination are the result of inartful drafting of amendments to her original complaint, ECF No. 70 at 8 n.2. Accordingly, the Court grants

---

[5] Defendant raised the issues of timeliness and exhaustion for the first time in its motion for summary judgment. Because these arguments should have been pled as affirmative defenses in its answer, the Court has examined whether Defendant waived these defenses by failing to include them in its late-filed answer or in any filing prior to its summary judgment motion. The Court determines that a finding of waiver is not appropriate in this case. The Second Circuit has held that "a district court may entertain unpleaded affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 176 (2d Cir. 2014); *see also Feeney v. Dunham*, No. 306CV310 DJS, 2007 WL 1186046, at *4 (D. Conn. Apr. 18, 2007) ("[I]n this Circuit, it is well established that an affirmative defense may be asserted even at summary judgment where the party opposing the affirmative defense has the opportunity to respond effectively to that defense, and has otherwise suffered no prejudice as a result of its late pleading." (citations omitted)). Plaintiff does not expressly argue that Defendant has waived its timeliness and exhaustion defenses. Nor does Plaintiff make any arguments regarding bad faith, dilatory motive, futility, or undue delay of the proceedings with respect to these defenses. Moreover, Plaintiff had the opportunity to respond to these defenses—and indeed, did respond to them—in her summary judgment opposition papers. Accordingly, the Court will consider each of Defendant's arguments regarding timeliness and exhaustion as if they were properly asserted as affirmative defenses in Defendant's pleading.

summary judgment in favor of Defendant insofar as Count One alleges age discrimination in violation of Title VII, *see* SAC ¶ 56.

Defendant's remaining arguments with respect to Plaintiff's discrimination claims require the Court to examine each position and career advancement opportunity pertaining to Count One independently.  Specifically, the Court must first examine whether Count One is procedurally proper with respect to each instance of alleged discrimination.  The Court must then apply the *McDonnell Douglas* framework to each instance of alleged discrimination that survives the Court's timeliness and exhaustion analysis.  With respect to the *McDonnell Douglas* framework, the Court notes as a preliminary matter that there is no dispute that Plaintiff has established the first prong of her *prima facie* case of discrimination, namely, that she is a member of a protected class.  *See* Pl. Rule 56(a)2 St. ¶ 1 (indicating that Plaintiff is a "Black woman of Hispanic descent born in Guatemala"); ECF No. 61-2 at 12 ("As a black female, plaintiff is a member of a protected class . . . .").  The Court will address each of Defendant's other arguments in turn, grouping positions where appropriate.

A. *De Facto* Department Head

First, the Court grants summary judgment in favor of Defendant to the extent Count One pertains to Plaintiff's claim that she served as a *de facto* department head without being formally appointed to the position and compensated as such.  Plaintiff asserts that she served as a *de facto* department head for "many years" without the official title and stipend that accompanied that position.  Pl. Rule 56(a)2 St. ¶ 39.  Plaintiff further argues that this discrimination constituted a "continuing violation" of Title VII.  ECF No. 70 at 11.  However, "it is well settled law in the Second Circuit that 'discrete acts' include . . . non promotions[] and failure to compensate adequately." *Delrio*, 292 F. Supp. 2d at 420.  Thus, Defendant's alleged failure to appoint Plaintiff

as department head and appropriately compensate her were discrete acts, not continuing violations. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997) ("[The plaintiff's] attempt to characterize as a continuing violation [the defendant's] alleged failure to compensate him adequately is . . . unavailing."). These "discrete acts" would have occurred when Plaintiff began performing department head duties but was not formally appointed to the position or compensated accordingly. By Plaintiff's own admission, this occurred "many years" ago. Thus, Plaintiff's claim of discrimination with respect to the department head position is untimely. *See id.* ("If [the plaintiff] was entitled to a pay raise because of the added responsibilities of his new position, the entitlement arose at the time of his promotion.").

### B. Job #s 963 and 964

The Court denies summary judgment to the extent Count One pertains to Job #s 963 and 964. Plaintiff has offered evidence that Job #s 963 and 964 were "21st Century Learning Centers – Summer Programming" positions, and that she applied for these positions on June 18, 2017. ECF No. 71-10 at 5. Defendant raises only procedural arguments regarding Plaintiff's discrimination claims with respect to these positions, without specifically referencing the merits of these claims. Accordingly, Defendant does not expressly dispute that Plaintiff was qualified for these positions or provide any evidence regarding why Plaintiff was denied these positions. The Court therefore does not interpret Defendant's motion as seeking summary judgment on the merits of Count One with respect to Job #s 963 and 964. For the reasons below, Defendant's procedural arguments regarding these positions fail.

The Court rejects Defendant's implication that Plaintiff's claims with respect to Job #s 963 and 964 are untimely. *See* Def. Rule 56(a)1 St., ECF No. 61-1, ¶ 28 (arguing that any applications filed on or before June 18, 2017, were adjudicated pursuant to Plaintiff's First CHRO/EEOC

Complaint).   The CHRO's finding of no reasonable cause with respect to Plaintiff's First CHRO/EEOC Complaint could not have covered Job #s 963 and 964.   As noted, Plaintiff applied to those jobs on June 18, 2017, *after* she filed her First CHRO/EEOC Complaint on May 8, 2017. Thus, the First CHRO/EEOC Complaint could only have included allegedly discriminatory acts that had occurred prior to its filing on May 8, 2017, and not Defendant's allegedly discriminatory refusal to promote Plaintiff with respect to Job #s 963 and 964.   The record does not include a formal ruling regarding Plaintiff's Second CHRO/EEOC Complaint, and as a result, the Court cannot determine whether the CHRO considered Job #s 963 and 964 when it issued its dismissal and notice of rights regarding that complaint, *see* ECF No. 71-15.   Regardless, considering that Plaintiff applied for Job #s 963 and 964 on June 18, 2017, any discrimination with respect to these positions likely occurred within the 300-day lookback period of the Second CHRO/EEOC Complaint, *i.e.*, between May 21, 2017, and March 17, 2018.   At the very least, questions of material fact remain regarding whether Plaintiff's claims of discrimination regarding these positions are timely.   Therefore, the Court denies summary judgment to the extent Count One pertains to these positions.

C.   Job #1001

The Court also denies summary judgment to the extent Count One pertains to Job #1001. Job #1001 consisted of two "administration/assistant principal" positions at Waterbury Arts Magnet School.   Pl. Rule 56(a)2 St. ¶ 35.   Defendant does not dispute the timeliness of Plaintiff's claims with respect to Job #1001.   However, the Court must address Defendant's general argument that Plaintiff has failed to exhaust her administrative remedies with respect to any alleged discrimination occurring after June 18, 2017, including any discrimination related to Job #1001. *See* ECF No. 61-2 at 17.

The Court rejects Defendant's argument that claims alleging discrimination that occurred after June 18, 2017, are unexhausted. This argument is sparsely briefed and difficult to understand. Due to the absence from the record of a formal ruling regarding the Second CHRO/EEOC Complaint, the Court cannot determine precisely which positions the CHRO considered in relation to the dismissal and notice of rights regarding that complaint. *See* ECF No. 71-15. At oral argument, Plaintiff stated that she did not receive a ruling on her Second CHRO/EEOC Complaint. Still, there is no indication that claims pertaining to alleged discrimination occurring after June 18, 2017, were somehow excluded from the CHRO's consideration of Plaintiff's Second CHRO/EEOC Complaint. Because Defendant bears the burden of proving Plaintiff's claims are unexhausted, the Court denies summary judgment on exhaustion grounds to the extent Count One is based on acts of discrimination alleged to have occurred between June 18, 2017, and March 17, 2018, including Defendant's failure to select Plaintiff for Job #1001.

With respect to the merits, Defendant conceded at oral argument that, even prior to the Court's preclusion ruling, there remained triable issues of fact insofar as Count One pertains to Job #1001. Based on its review of the record—without considering the precluded evidence, some of which pertained to Job #1001—the Court agrees. Accordingly, the Court will decline to grant summary judgment on Count One to the extent it pertains to Job #1001.

### D. Career & Technical Education Coordinator

The Court denies summary judgment to the extent Count One pertains to the Career & Technical Education (CTE) Coordinator position. Plaintiff contends that she served as CTE Coordinator for several years and received a stipend for this work, and that she was not asked to serve as CTE Coordinator after the 2016/2017 school year. Pl. Rule 56(a)2 St. ¶¶ 113–15. Because the lookback period began on May 21, 2017, shortly before the end of the 2016/2017 school year,

the Court cannot determine as a matter of law that this claim is time-barred.  Moreover, as discussed above with respect to Job #1001, the Court denies Defendant's request for a grant of summary judgment on exhaustion grounds to the extent Count One is based on acts of discrimination alleged to have occurred between June 18, 2017, and March 17, 2018.  In its briefing, Defendant does not specifically reference the merits of Plaintiff's discrimination claim with respect to the CTE Coordinator position.  Accordingly, the Court does not interpret Defendant's motion as seeking summary judgment on the merits of Count One with respect to the CTE Coordinator position.  As a result, summary judgment is denied to the extent Count One pertains to this position.

E.  <u>On-Call Administrator Position</u>

Defendant seeks summary judgment to the extent Count One pertains to the on-call administrator position at Wilby High School.  Defendant does not dispute that Plaintiff very rarely served as an on-call administrator, Def. Rule 56(a)1 St. ¶ 19, or that Plaintiff satisfies the first and second prongs of her *prima facie* case of discrimination with respect to this claim for at least some time periods relevant to the SAC, ECF No. 61-2 at 12.  Rather, Defendant attacks this claim on two fronts.  First, Defendant argues that, insofar as the claim pertains to certain instances of alleged discrimination that occurred after March 17, 2018, the date Plaintiff filed her Second CHRO/EEOC Complaint, the claim should fail on procedural grounds.  Second, Defendant argues that, regardless of any procedural issues, this claim should fail on the merits because Defendant's failure to select Plaintiff for the on-call administrator position did not constitute an adverse employment action.  For the reasons below, the Court agrees with Defendant that its failure to select Plaintiff for this position did not constitute an adverse employment action for purposes of

Count One.  Because the Court agrees that this claim fails on the merits, the Court grants summary judgment in favor of Defendant on this claim, without reaching Defendant's procedural arguments.

The "failure to assign [a plaintiff] temporary acting manager responsibilities" does not constitute an actionable denial of a promotion.  *Petrosino*, 385 F.3d at 228.  In *Petrosino*, the Second Circuit addressed a plaintiff's claim that her employer discriminated against her by failing to assign her to temporary acting manager positions.  *Id.* at 228–29.  The court explained that "[a]lthough the record suggests that temporary acting manager assignments were an important first step for [an employee] who wished to receive a managerial promotion, the assignments themselves did not materially alter the [employee's] job status."  *Id.*  The court further explained that "[a] temporary acting manager received no additional pay or benefits; he or she simply substituted for brief periods when employees who actually held specific managerial positions were on leave or vacation."  *Id.*  The court therefore concluded that "an assignment to substitute for an absent supervisor generally cannot fairly be labeled a promotion."  *Id.* at 229.

Here, the on-call administrator position merely constituted an opportunity for employees to substitute for brief periods when vice principals were absent, and therefore, the failure to select an employee for this position is not actionable as a Title VII discrimination claim.  Plaintiff does not claim that the position was accompanied by any additional pay or benefits.  ECF No. 70 at 23–24.  Rather, Plaintiff claims that Defendant's failure to select her for this position diminished her ability to be promoted to a managerial position in the future.  *Id.*  However, this does not change the fact that the temporary substitute assignments themselves "did not materially alter" Plaintiff's job status.  *See Petrosino*, 385 F.3d at 228; *see also Darling v. Potter*, No. 3:04CV1467 (PCD), 2005 WL 2045951, at *7 (D. Conn. Aug. 25, 2005) (noting that, "[i]n *Petrosino*, . . . the Second Circuit held that temporary acting supervisor positions are not actionable promotions"); *Wright v.*

*City of Syracuse*, No. 5:10-CV-0661 GTS/TWD, 2014 WL 1293527, at *26 (N.D.N.Y. Mar. 31, 2014), *aff'd*, 611 F. App'x 8 (2d Cir. 2015) (citing *Petrosino* and noting that "it is questionable whether . . . assignment [to a temporary, acting crew leader position within a city bureau] may be considered a promotion"); *Harrison v. U.S. Postal Serv.*, No. 06 CIV 13131 GBD, 2010 WL 3291804, at *4 (S.D.N.Y. Aug. 10, 2010), *aff'd*, 450 F. App'x 38 (2d Cir. 2011) ("Plaintiff's claims concerning . . . lack of temporary promotional assignments . . . are inadequate.").

Plaintiff's arguments to the contrary are unpersuasive.  Although the protections provided by Title VII are not limited to "instances of discrimination in pecuniary emoluments," *see de la Cruz v. N.Y.C. Hum. Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 21 (2d Cir. 1996), Plaintiff offers no binding authority for the assertion that not being afforded a temporary substitute assignment constitutes an adverse employment action.  Accordingly, the Court grants summary judgment in favor of Defendant insofar as Count One alleges that Defendant discriminated against Plaintiff by declining to select her as on-call administrator.

### F.  Removal from Leadership Meetings and Committees

The Court grants summary judgment in favor of Defendant to the extent Count One pertains to Plaintiff's alleged exclusion from meetings and removal from committees.  Plaintiff contends that she was not invited to attend leadership and committee meetings or permitted to run instructional data team meetings after the 2016/2017 school year.  *See* Pl. Rule 56(a)2 St. ¶¶ 116, 117–18, 121.  Because the lookback period began on May 21, 2017, shortly before the end of the 2016/2017 school year, the Court cannot determine as a matter of law that these claims are time-barred or unexhausted.  However, removal from committees and exclusion from meetings, without more, are not adverse employment actions for purposes of Title VII discrimination claims.  As a result, Plaintiff has failed to establish a *prima facie* case with respect to this alleged discrimination.

As discussed, an adverse employment action "is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Vega*, 801 F.3d at 85. The Second Circuit has held that exclusion from meetings does not constitute an adverse employment action. *See Betterson v. HSBC Bank USA, N.A.*, 661 F. App'x 87, 90 (2d Cir. 2016) (summary order) ("Exclusion from certain meetings is not an adverse employment action . . . ."); *Littlejohn v. City of New York*, 795 F.3d 297, 312 n.10 (2d Cir. 2015) ("To the extent [the plaintiff] attempts to point to exclusion from meetings . . . as part of her disparate treatment claim, such exclusion does not constitute an adverse employment action within the meaning of Title VII."). Several district courts in this Circuit have also found that exclusion from meetings and other company activities does not constitute an adverse employment action. *Spence v. Bukofzer*, No. 15 CIV. 6167 (ER), 2017 WL 1194478, at *7 (S.D.N.Y. Mar. 30, 2017) ("Being assigned less desirable posts or being excluded from meetings do not alone constitute adverse employment actions."); *James*, 2016 WL 698136, at *4 (finding that "exclu[sion] from certain company activities" was not "sufficiently serious [to] constitute an adverse employment action for the purposes of a Title VII discrimination claim").

Likewise, courts in this Circuit have held that an employee's removal from a committee, without more, does not constitute an adverse employment action for purposes of a Title VII discrimination claim. *See Jaggon v. Cmty. Health Servs., Inc.*, No. 3:18-CV-458 (JCH), 2019 WL 4414953, at *5 (D. Conn. Sept. 16, 2019) (finding that plaintiff "presented no evidence upon which a reasonable jury could find that his removal from . . . committees constituted a 'materially adverse change'"); *Spector v. Bd. of Trs. of Cmty.-Tech. Colls.*, No. CIV.A. 3:06-CV-129JC, 2007 WL 4800726, at *8 (D. Conn. Dec. 27, 2007), *aff'd sub nom.*, 316 F. App'x 18 (2d Cir. 2009) ("[The plaintiff] cites no support for the proposition that being removed from his position as Secretary to this Committee was an adverse employment action."); *see also Davis v. NYS Dep't of Corr. Attica*

*Corr. Facility P.O. Box 149 Attica, N.Y. 14011*, 46 F. Supp. 3d 226, 236 (W.D.N.Y. 2014) ("With respect to Plaintiff's testimony that she was prevented from serving on the NAACP board, Plaintiff has not produced evidence supporting the conclusion that not being on this board materially impacted the terms and conditions of her employment.").

Here, Plaintiff has presented no evidence that her exclusion from meetings and removal from committees materially impacted the terms or conditions of her employment. Rather, Plaintiff vaguely argues that she was deprived of the opportunities to lead, to list these experiences on her applications for administrator positions, and to use these experiences to her advantage in job interviews. *See* ECF No. 70 at 23. Notably, Plaintiff offers no support for her assertion that the inability to list an experience on a résumé or discuss it in a job interview makes the denial of that experience an adverse employment action. Accordingly, Plaintiff's arguments are unavailing. The Court grants summary judgment in favor of Defendant to the extent Count One alleges discrimination based on Plaintiff's exclusion from meetings and removal from committees.

### VI.    COUNT TWO:  RETALIATION IN VIOLATION OF TITLE VII

Count Two alleges retaliation in violation of Title VII. Based on the SAC and the parties' briefing, the Court identifies the following positions and career advancement opportunities as pertaining to Count Two. First, Plaintiff asserts that Defendant retaliated against her by failing to promote her to the following positions:  Job #s 963, 964, and 1001, discussed above; Job #1089 (Secondary Summer School Program Coordinator, Summer of 2018); Job #1363 (Secondary Summer School Program Coordinator, Summer of 2019); Job #1424 (North End Middle School House Vice Principal); Job #1425 (duplicate of Job #1424); Job #1426 (West Side Middle School House Vice Principal); Job #1427 (Crosby High School Vice Principal); Job #1448 (Crosby High School Building Principal); Job #1455 (CTE Content Supervisor); Job #1495 (Crosby High School

Vice Principal); Job #1496 (Waterbury Career Academy Vice Principal); and Job #1567 (reposting of Job #1495 after another applicant declined the position).  In addition, Plaintiff claims that Defendant retaliated against her by denying her the opportunity to:  attend leadership meetings; run instructional data team meetings; serve on certain committees; serve as an advisory and Student Success Plan (SSP) facilitator; serve as the CTE Coordinator; serve as an on-call administrator; and serve as department head.

As with Count One, Defendant attacks Count Two on multiple fronts.  First, Defendant asserts that Count Two is not procedurally proper with respect to certain alleged retaliatory acts.  Second, Defendant contends that Plaintiff has not established a *prima facie* case of retaliation.  Third, Defendant contends that, even if Plaintiff can establish her *prima facie* case, Defendant had legitimate, nonretaliatory reasons for denying Plaintiff certain positions and career advancement opportunities.  Finally, Defendant asserts that Plaintiff cannot show that Defendant's legitimate, nonretaliatory reasons are pretext.

As related above, the elements of a *prima facie* case of retaliation are:  "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Hicks*, 593 F.3d at 164.  Plaintiff has established the first and second prongs of her *prima facie* case of retaliation—namely, that she participated in protected activity and that Defendant knew of this protected activity.  Plaintiff engaged in protected activity when she filed each of her two CHRO/EEOC complaints.  *See* 42 U.S.C. § 2000e-3(a) (prohibiting retaliation against an employee because she "has made a charge . . . or participated in any manner in [a Title VII] investigation, proceeding, or hearing").  Defendant admits knowledge of Plaintiff's Second CHRO/EEOC Complaint, but does not expressly admit knowledge of her First CHRO/EEOC

Complaint.  *See* ECF No. 61-2 at 35.  However, pursuant to Connecticut state statute, the CHRO is required to serve an employer with a "discriminatory practice complaint," such as Plaintiff's CHRO/EEOC complaints, "[n]ot later than fifteen days after the date of filing" of that complaint. *See* Conn. Gen. Stat. § 46a-83(a).  The Court therefore assumes that Defendant knew about both of Plaintiff's CHRO/EEOC complaints no later than fifteen days after each complaint was filed. *See Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 223 (E.D.N.Y. 2014) ("[B]ecause the EEOC responds to charges of discrimination by investigating the incident with the employer, the Court presumes that Defendants had knowledge of Plaintiff's charge, and Defendants have not asserted otherwise.").  Accordingly, Plaintiff has carried her modest burden of establishing the first two prongs of her *prima facie* case.

For the remainder of its analysis with respect to Count Two, the Court will examine each instance of alleged retaliation in turn, grouping such instances where appropriate.

### A.  Plaintiff's Failure to Promote Claims

Plaintiff asserts that Defendant retaliated against her by failing to promote her to Job #s 963, 964, 1001, 1089, 1363, 1424, 1425, 1426, 1427, 1448, 1455, 1495, 1496, and 1567.  For the reasons below, the Court grants summary judgment insofar as Count Two pertains to Job #s 1089, 1363, 1424, 1425, 1426, 1427, 1448, 1455, 1495, 1496, and 1567.  However, the Court denies summary judgment insofar as Count Two pertains to Job #s 963, 964, and 1001.

As an initial matter, Plaintiff applied for all of these positions during or after the lookback period.  Thus, insofar as Count Two alleges that Defendant retaliated against Plaintiff by failing to promote her to these positions, it is not time-barred.  Likewise, insofar as Plaintiff alleges that Defendant retaliated against her by failing to promote her to these positions, the Court declines to grant summary judgment on exhaustion grounds.  Claims pertaining to the failure to promote

Plaintiff during the lookback period were exhausted by Plaintiff's Second CHRO/EEOC Complaint.[6]  Claims pertaining to the failure to promote Plaintiff after the lookback period in retaliation for filing her Second CHRO/EEOC Complaint are "reasonably related" to the claims in that complaint, and as a result, Plaintiff is excused from exhausting them.  *See Siuzdak v. Lynch*, No. 14-CV-001543 (VAB), 2016 WL 868801, at *5 (D. Conn. Mar. 7, 2016) ("Exhaustion is not required where a claim is 'reasonably related' to the claim filed with the agency."); *Oliphant v. State of Conn. Dep't of Transp.*, No. 3:02CV700(PCD), 2004 WL 3249237, at *7 (D. Conn. Aug. 25, 2004) (noting that "claims not alleged in an EEOC charge are sufficiently related to provide jurisdiction . . . 'where the claim alleges retaliation for filing the EEOC charge'").  Accordingly, the Court declines to grant summary judgment on procedural grounds to the extent Count Two pertains to Defendant's failure to promote Plaintiff to the positions discussed in this section.

Turning to the merits of the claims discussed in this section, Plaintiff has established the first three prongs of her *prima facie* case with respect to her retaliation failure to promote claims. As discussed above, Plaintiff has established the first two prongs—that she participated in protected activity and that Defendant had knowledge of that protected activity.  With respect to the third prong, failure to promote constitutes an adverse employment action in the Title VII retaliation context.  *See Mills v. S. Conn. State Univ.*, 519 F. App'x 73, 76 (2d Cir. 2013) (summary order) (noting that "the failure to promote is an adverse employment action constituting possible retaliation").  Thus, the only remaining question with respect to Plaintiff's *prima facie* case is

---

[6] Based on a notation on the first page of Plaintiff's Second CHRO/EEOC Complaint that appears to indicate that Plaintiff was "retaliated against on or about 01/2018; CONTIN[UOUS]," Ex. B to Mot. at 2, Defendant argues that any claims regarding retaliatory acts before January of 2018, are beyond the scope of the Second CHRO/EEOC Complaint.  *See* ECF No. 61-2 at 5.  Defendant suggests that, as a result, Plaintiff has not exhausted her administrative remedies with respect to such alleged retaliatory acts.  However, the body of the Second CHRO/EEOC Complaint appears to allege retaliation preceding January of 2018.  *See* Ex. B. to Mot. ¶¶ 15, 18.  Accordingly, because the Court must draw all reasonable inferences in favor of Plaintiff, and because Defendant bears the burden of proof with respect to exhaustion, the Court does not find that the retaliation alleged in the Second CHRO/EEOC Complaint is restricted to conduct occurring during or after January of 2018.

whether Plaintiff has established a causal link between her protected activity and Defendant's failure to promote her.   In order to establish causation, Plaintiff relies predominantly on the temporal proximity between her protected activity and Defendant's failure to promote her.

"[A] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action.'" *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) (second alteration in original).   Although the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between a protected activity and an allegedly retaliatory action," *id.*, it has noted that "courts in this circuit have typically measured that gap as a matter of months, not years," *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 131 (2d Cir. 2012).   Thus, a court must "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013).   Importantly, "[i]n the Second Circuit and district courts within the Second Circuit, time periods greater than one year have been found, in general, to be insufficient to establish this temporal relationship." *Douglas v. City of Waterbury*, 494 F. Supp. 2d 112, 125 (D. Conn. 2007).   By contrast, "[w]ithin the time period of one year, there is no firm rule," and under certain circumstances, temporal proximity of up to eight months has been deemed sufficient. *Id.*

Temporal proximity is insufficient to establish *prima facie* causation with respect to Job #s 1363, 1424, 1425, 1426, 1427, 1448, 1455, 1495, 1496, and 1567.   Plaintiff applied for each of these positions on or after May 14, 2019, *see* ECF No. 71-10 at 1–4, which was more than one year after she filed her Second CHRO/EEOC Complaint.   Therefore, temporal proximity alone is

insufficient to establish causation with respect to these positions.  *See Douglas*, 494 F. Supp. 2d at 125 (noting that "time periods greater than one year have been found, in general, to be insufficient to establish [a] temporal relationship").  Plaintiff has not offered any other direct or indirect evidence linking her protected activity to Defendant's failure to promote her to these positions. Instead, Plaintiff argues that Defendant's "weak," "non-discriminatory" reasons for not selecting Plaintiff support an inference of retaliation and pretext.  ECF No. 70 at 35–36.  However, while "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons" may allow "a reasonable juror [to] conclude that the explanations were a pretext for a prohibited reason," *Kwan*, 737 F.3d at 846, Plaintiff must still carry her initial, *de minimis* burden of establishing a causal link between her protected activity and an adverse employment action.  Here, Plaintiff has not done so.  Accordingly, Plaintiff has failed to establish her *prima facie* case with respect to Job #s 1363, 1424, 1425, 1426, 1427, 1448, 1455, 1495, 1496, and 1567.  The Court grants summary judgment in favor of Defendant to the extent Count Two pertains to Defendant's purported failure to promote Plaintiff to these positions.

By contrast, the Court finds that temporal proximity is sufficient to create genuine issues of material fact with respect to *prima facie* causation to the extent Count Two pertains to Job #s 963, 964, 1001, and 1089.  Plaintiff has presented evidence that within six weeks after she filed her First CHRO/EEOC Complaint on May 8, 2017, she applied to Job #s 963 and 964.  ECF No. 71-10 at 5.  Although the date on which Defendant failed to promote Plaintiff to these positions is unclear, it is reasonable to infer that the failure to promote occurred within a few months of Plaintiff's applications.  Plaintiff has also presented evidence that she applied for Job #1001 on October 1, 2017, ECF No. 71-10 at 4, and that candidates were selected for Job #1001 on January 24, 2018, ECF No. 71-13 at 1.  Accordingly, any retaliation with respect to Job #1001 occurred

within approximately eight months of Plaintiff's First CHRO/EEOC Complaint.  Finally, Plaintiff has presented evidence that, within approximately four months after she filed her Second CHRO/EEOC Complaint on March 17, 2018, Defendant failed to promote her to Job #1089. Specifically, Plaintiff has presented evidence that the position was posted on April 9, 2018, ECF No. 71-10 at 4, and was filled by the summer of 2018, Pl. Rule 56(a)2 St. ¶ 45.  Thus, given Second Circuit precedent regarding temporal proximity, and drawing all reasonable inferences in favor of Plaintiff, the Court finds that there are genuine issues of material fact with respect to *prima facie* causation insofar as Count Two pertains to Job #s 963, 964, 1001, and 1089.  *See Rivera v. JP Morgan Chase*, 815 F. App'x 603, 608 (2d Cir. 2020) (summary order) ("[T]his Court has held that a one to two month period between the protected activity and adverse employment action is generally sufficient to make a *prima facie* causation showing."); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir. 1980) (plaintiff established *prima facie* causation where alleged retaliation occurred eight months after protected activity).

These genuine disputes of material fact preclude the issuance of summary judgment in favor of Defendant at the *prima facie* stage of the Court's *McDonnell Douglas* analysis with respect to Job #s 963, 964, 1001, and 1089.  However, even if the Court assumes that Plaintiff *has* established her *prima facie* case, a grant of summary judgment in favor of Defendant could still be appropriate with respect to these positions.  If the Court assumes Plaintiff has established her *prima facie* case, the burden then shifts to Defendant to "articulate a legitimate, non-retaliatory reason" for each alleged failure to promote.  *See Hicks*, 593 F.3d at 164.  If Defendant fails to do so, summary judgment cannot be granted in its favor.  If Defendant does articulate a legitimate, non-retaliatory reason for a failure to promote, the burden will then shift back to Plaintiff to show that

retaliatory reasons were nonetheless a "'but-for' cause of the adverse action." *See Kwan*, 737 F.3d at 846.  Summary judgment may still be appropriate if Plaintiff cannot meet her resulting burden.

Defendant does not specifically mention Job #s 963 and 964 in its briefing regarding Plaintiff's retaliation claim.  As a result, Defendant has not offered any legitimate, nonretaliatory reasons for failing to promote Plaintiff to these positions.  Therefore, Defendant has failed to shift the burden back to Plaintiff with respect to Job #s 963 and 964, and summary judgment cannot be granted on Count Two insofar as it pertains to these positions.  With respect to Job #1001, counsel for Defendant conceded at oral argument that questions of material fact remain as to Defendant's failure to select Plaintiff for this posting.  Summary judgment is therefore also inappropriate as to Count Two insofar as it relates to Job #1001.

By contrast, Defendant states that it selected Raymond Irrera for Job #1089 because he had experience serving in this position for the previous two summers.  Def. Rule 56(a)1 St. ¶ 46.  This constitutes a legitimate, nonretaliatory reason for not selecting Plaintiff.  *See Chavis v. Wal-Mart Stores, Inc.*, 265 F. Supp. 3d 391, 409 (S.D.N.Y. 2017) ("[The defendant] has articulated non-retaliatory motives for hiring candidates other than [the plaintiff] for each of the promotions at issue, specifically that the other candidates had more experience or outperformed [the plaintiff] in areas relevant to the job qualifications.").  Therefore, the burden shifts back to Plaintiff to show that retaliation was a "but-for" cause of Defendant's failure to select her.  Rather than attempting to make this showing, Plaintiff *admits* that Irrera was selected for Job #1089 because of his past experience in the position.  Pl. Rule 56(a)2 St. ¶ 46.  Accordingly, because Plaintiff's briefing supports, rather than rebuts, Defendant's assertion that Irrera was selected for legitimate, non-retaliatory reasons, the Court grants summary judgment in favor of Defendant to the extent Count Two pertains to its failure to promote Plaintiff to Job #1089.

### B. *De Facto* Department Head

The Court grants summary judgment on Count Two to the extent Plaintiff claims that Defendant retaliated against her by failing to formally appoint her as department head and compensate her accordingly.  For the reasons stated above where the Court discusses this position with respect to Count One, this claim is untimely.  Specifically, Defendant's failure to appoint Plaintiff as a department head and compensate her accordingly constituted a "discrete act," *see Delrio*, 292 F. Supp. 2d at 420, that occurred when Plaintiff began performing department head duties but was not formally appointed to this position or compensated appropriately. *See Lightfoot*, 110 F.3d at 907.  By Plaintiff's own admission, this occurred "many years" ago.  Accordingly, this claim is untimely.

### C. On-Call Administrator

The Court grants summary judgment on Count Two to the extent Plaintiff alleges that Defendant retaliated against her by failing to select her to serve as an on-call administrator. Plaintiff claims that, after she filed her Second CHRO/EEOC Complaint, she did not serve as an on-call administrator in 2018 and 2019.  ECF No. 70 at 34.  However, Plaintiff also claims that she served in this role "very rarely, likely only five times over seven years," even though there were approximately forty opportunities to do so each year.  Pl. Rule 56(a)2 St. ¶ 102.  Notably, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001), *as amended* (June 6, 2001).  Here, it appears Defendant's failure to select Plaintiff as an on-call administrator began long before Plaintiff engaged in the protected activity that forms the basis for her retaliation claims.  Plaintiff's only evidence linking her Second CHRO/EEOC Complaint to Defendant's

failure to select her as an on-call administrator is timing.  Because Plaintiff claims that Defendant's failure to select her began prior to her protected activity, an inference of retaliation does not arise, and Plaintiff has failed to establish *prima facie* causation with respect to the on-call administrator role.

### D.  Other Leadership and Career Advancement Opportunities

The Court denies summary judgment on Count Two to the extent Plaintiff claims that Defendant retaliated against her by denying her the opportunity to attend leadership meetings, run instructional data team meetings, serve on certain committees, serve as an advisory and SSP facilitator, and serve as CTE Coordinator.  Plaintiff claims she participated in these opportunities for several years but was not invited to do so after she filed her CHRO/EEOC complaints.  *See* Pl. Rule 56(a)2 St. ¶¶ 116, 117–18, 121, 124.  Because Plaintiff claims that this retaliation occurred after the end of the 2016/2017 school year or after she filed her CHRO/EEOC complaints, the Court cannot determine that these claims are time-barred or otherwise procedurally improper.

Moreover, the Court finds that there are genuine issues of material fact as to whether Plaintiff has established her *prima facie* case with respect to these opportunities.  As noted, Plaintiff has established the first two prongs of her *prima facie* case by showing that Defendant had knowledge of her two CHRO/EEOC complaints.  With respect to the third prong, whether Plaintiff has suffered an adverse employment action with respect to these opportunities, the Court must consider these alleged retaliatory acts "both separately and in the aggregate, as even minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable."  *See Hicks*, 593 F.3d at 165.  The Court finds that, viewing the denials of these opportunities in the aggregate, there are genuine issues of material fact with respect to whether they constituted adverse employment actions.

The Court acknowledges that, viewing the alleged retaliation discussed in this section as independent acts, each alleged act might not constitute an adverse employment action on its own. *See McCullough v. Xerox Corp.*, 942 F. Supp. 2d 380, 387 (W.D.N.Y. 2013) (finding that, for purposes of a *prima facie* case of retaliation, "being left out of meetings does not amount to an adverse action, absent a showing that some additional negative consequences flowed from that exclusion"). However, viewing these denials in the aggregate, there are genuine issues of material fact as to whether they "might have dissuaded a reasonable worker from making or supporting a charge of discrimination," *see White*, 548 U.S. at 68. Accordingly, these denials may constitute adverse employment action for purposes of Plaintiff's retaliation claims.[7] *See Husser v. N.Y.C. Dep't of Educ.*, 137 F. Supp. 3d 253, 273 (E.D.N.Y. 2015) (finding that, even though some of the alleged adverse employment actions "plainly d[id] not suffice to support a claim of retaliation on their own," the plaintiff "ha[d] adduced evidence that, in the aggregate, could allow a reasonable jury to determine the conditions of her employment . . . were made sufficiently adverse to support a retaliation claim"); *see also Timothy v. Our Lady of Mercy Med. Ctr.*, No. 03 CIV. 3556 (RCC), 2004 WL 503760, at *7 (S.D.N.Y. Mar. 12, 2004) ("Taken in the aggregate, the series of actions that Plaintiff alleges–loss of office space, interference with computer rights, diminished job responsibilities, and exclusion from meetings–may constitute adverse employment action."); *Rowe v. N.Y. State Div. of Budget*, No. 1:11-CV-1150 LEK, 2013 WL 6528841, at *3 (N.D.N.Y. Dec. 11, 2013) ("Defendant's 'course of action in excluding Plaintiff from various meetings, projects and trainings and in changing Plaintiff's title' might . . . represent adverse actions supporting her retaliation claim.").

---

[7] The Court did not consider denials in the aggregate with respect to Plaintiff's discrimination claim in Count One because, "[a]lthough incidents may be considered in the aggregate in the retaliation context, courts have not yet recognized such claims in the discrimination context," *see Lewis v. Boehringer Ingelheim Pharms., Inc.*, 79 F. Supp. 3d 394, 412 (D. Conn. 2015) (citations omitted).

There are also genuine issues of material fact as to whether Plaintiff has established the fourth prong of her *prima facie* case with respect to the denied opportunities discussed in this section. Plaintiff has offered evidence that each of these alleged adverse employment actions occurred within approximately four months after her protected activity. *See* Pl. Rule 56(a)2 St. ¶¶ 116, 117–18, 121; *see also* ECF No. 70 at 31 (asserting that the 2017/2018 school year, when several acts of retaliation allegedly occurred, began in August 2017). Thus, the temporal proximity between Plaintiff's protected activity and these alleged retaliatory acts may be sufficient to establish *prima facie* causation. *See Grant*, 622 F.2d at 46 (plaintiff established causation for purposes of *prima facie* case where alleged retaliation occurred eight months after protected activity).

The Court therefore holds that summary judgment cannot be granted at the *prima facie* stage. However, assuming that Plaintiff has established her *prima facie* case, the burden would shift to Defendant to offer legitimate, nonretaliatory reasons for denying Plaintiff these opportunities. Defendant offers no such reasons in its briefing. Instead, Defendant's argument with respect to retaliation focuses predominantly on the assertion that the denials of these opportunities did not constitute adverse employment actions, an argument the Court has rejected above. Accordingly, summary judgment is unwarranted insofar as Count Two alleges that Defendant retaliated against Plaintiff by denying her these opportunities.

## VII.    CONCLUSION

For the reasons described herein, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Specifically, the Court orders the following.

Summary judgment is granted in favor of Defendant insofar as Count One pertains to the following claims: Defendant's alleged age discrimination; Defendant's alleged failure to appoint

Plaintiff as department head and compensate her accordingly; Defendant's alleged failure to select Plaintiff for the on-call administrator position; Defendant's alleged exclusion of Plaintiff from leadership and instructional data meetings; and Defendant's alleged removal of Plaintiff from certain committees. Summary judgment is denied insofar as Count One pertains to: Defendant's alleged failure to promote Plaintiff to Job #s 963, 964, and 1001; and Defendant's alleged refusal to allow Plaintiff to serve as Career & Technical Education (CTE) Coordinator.

Summary judgment is granted in favor of Defendant insofar as Count Two pertains to the following claims: Defendant's alleged failure to promote Plaintiff to Job #s 1089, 1363, 1424, 1425, 1426, 1427, 1448, 1455, 1495, 1496, and 1567; Defendant's alleged failure to appoint Plaintiff as department head and compensate her accordingly; and Defendant's alleged failure to select Plaintiff for the on-call administrator position. Summary judgment is denied insofar as Count Two pertains to Defendant's alleged failure to promote Plaintiff to Job #s 963, 964, and 1001; Defendant's alleged exclusion of Plaintiff from leadership and instructional data team meetings; Defendant's alleged removal of Plaintiff from certain committees; Defendant's alleged refusal to allow Plaintiff to serve as an advisory and Student Success Plan (SSP) facilitator; and Defendant's alleged refusal to allow Plaintiff to serve as CTE Coordinator.

The Court will convene a conference with the parties to set a trial date.

**SO ORDERED** at Hartford, Connecticut, this 12th day of August, 2022.

                     */s/ Sarala V. Nagala*
                     SARALA V. NAGALA
                     UNITED STATES DISTRICT JUDGE